```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11 23 09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

RONALD ALSTON,

                    Plaintiff,                08 Civ. 1517

        -against-                             OPINION

DR. BENDHEIM, et al.,

                    Defendants.

-----------------------------------X

A P P E A R A N C E S:


            Pro Se

            RONALD ALSTON
            00-A-3985
            Great Meadow Correctional Facility
            P.O. Box 51
            Comstock, NY  12821

            Attorneys for Defendants

            OFFICE OF THE ATTORNEY GENERAL (NYS)
            120 Broadway
            New York, NY  10271
            By:  Thomas M. Biesty, Esq.

**Sweet, D.J.**

Defendants Drs. Bendheim, Bernstein, Koenigsmann, and Wright and Physician Assistant Rodas (collectively, the "Defendants") have moved under Rule 12(b)6, F. R. Civ. P. to dismiss the amended complaint of plaintiff, pro se, Ronald Alston ("Alston" or the "Plaintiff") alleging violations of 42 U.S.C. § 1983.  Upon the conclusions set forth below, the motion is granted and the amended complaint is dismissed.

## I.    PRIOR PROCEEDINGS

Alston was incarcerated at Southport Correctional Facility at the time of filing his complaint on February 14, 2008.  See Am. Cmpl. At p. 2.  The events relevant to this motion occurred at the Green Haven Correctional Facility ("Green Haven").  Id. at p. 2.  The Defendants making this motion were employed by the New York State Department of Correctional Services during the time the events occurred which gave rise to this complaint.  See id. at pp. 2-3.  The amended complaint was filed on October 29, 2008.  The instant motion was marked fully submitted on April 3, 2009.

1

## II. THE AMENDED COMPLAINT

In June 2004, Dr. Bendheim prescribed the medication Ultram for Plaintiff's lower back pain. Id. at ¶ 2. In addition, in October 2004, Dr. Bendheim prescribed another drug Neurontin for Plaintiff. Id. at ¶ 2. Dr. Bendheim increased Plaintiff's dosages of these medications in November and December 2004. Id. at ¶¶ 4, 8.

Defendant Dr. Mamis replaced Dr. Bendheim as Plaintiff's primary physician. Id. at ¶ 10. In January 2005, Dr. Mamis informed Plaintiff that his pain medication was being discontinued. Id. at ¶ 11. On January 23, 2005 Plaintiff's pain medication was discontinued. Id. at ¶ 12. Several days later Plaintiff became ill. Id. at ¶ 15.

The day after becoming ill, Plaintiff went to the health clinic where he took pills of Ultram from a fellow inmate who was in the process of disposing of them. Id. at ¶¶ 17-18. Plaintiff used Ultram by purchase from other inmates. Id. at ¶ 22. Plaintiff became dependent physically and psychologically on Ultram. Id. at ¶ 24.

In late January 2005, Alston twice visited Green Haven's health clinic complaining of various symptoms following the discontinuance of his Ultram prescription. Id. at ¶¶ 25-26. Alston saw Dr. Mamis on February 1, 2005 and related his illness to him and Dr. Mamis gave him Ibuprofen. Id. at ¶ 27.

In early February 2005, Alston filed a grievance concerning his medical treatment. Id. at ¶ 33. Defendants Dr. Koenigsmann and Nurse Administrator Stevens responded to his grievance on February 10 and 11, 2005 respectively. Id. at ¶ 37. On February 17, 2005, Alston's grievance was denied, and he appealed. Id. at ¶ 41.

On February 18, 2005, Alston wrote a letter to Green Haven's mental health unit in which he threatened to commit suicide which resulted in several visits by Alston to the mental health unit. Id. at ¶¶ 42-46. He was brought to the health clinic on February 22, 2005 where he was evaluated by two nurses. Id. at ¶ 47. Shortly after his examination, Alston was approached by Defendant Rodas who inquired about his complaints and from whom he was obtaining his Ultram. Id. at ¶ 48. Alston refused to disclose this information and was brought back to the

3

mental health unit and placed in a drug observation cell. Id. at ¶ 50. He remained in observation at the mental health unit from February 22nd through February 28th. Id. at ¶ 54. Upon his release from observation, he returned to his illicit usage of Ultram. Id.

In early June 2005, Alston was charged with a misbehavior report for illicit drug usage and improperly writing a letter in another inmates' name. Id. at ¶ 64. He was found guilty but promised medical assistance by the hearing officer. Id. at ¶ 66. In June 2005, Alston wrote defendant Dr. Bernstein twice concerning his issue with Ultram but received no response. Id. at ¶¶ 67, 69. On June 29, 2005, Alston met with Dr. Bernstein regarding his addiction. Id. at ¶ 72. He was placed into detoxification but received ineffective treatment. Id. at ¶ 73.

Upon his release from the health clinic on July 7, 2005, Alston returned to his Ultram habit. Id. at ¶ 75. Plaintiff continued using Ultram until December, 2007. Id. at ¶ 94.

### III. THE RULE 12(B)(6) STANDARD

On a motion to dismiss pursuant to Rule 12, all factual allegations are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

However, while the pleading standard set forth in Rule 8 of the Fed. R. Civ. P. is a liberal one,

> the pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusion or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal cites and quotes omitted).  Thus, a complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." Id. (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In meeting

this "plausibility standard," the plaintiff must

demonstrate more than a "sheer possibility" of unlawful

action; pleading facts that are "'merely consistent with' a

defendant's liability . . . 'stops short of the line

between possibility and plausibility of entitlement to

relief.'"  Id. (quoting Twombly, 550 U.S. at 557); see also

Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 131

(2d Cir. 2007) ("Although the pleading standard is a

liberal one, bald assertions and conclusions of law will

not suffice.  To survive dismissal, the plaintiff must

provide the grounds upon which his claim rests through

factual allegations sufficient to raise a right to relief

above the speculative level." (internal quotes and cites

omitted)); Gavish v. Revlon, Inc., No. 00 Civ. 7291 (SHS),

2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004) ("[B]ald

contentions, unsupported characterizations, and legal

conclusions are not well-pleaded allegations and will not

defeat a motion to dismiss.").


        Although the allegations of a pro se

complaint are reviewed under less stringent standards

than pleadings drafted by counsel, the "duty to

liberally construe plaintiff's complaint is not the

6

equivalent of a duty to re-write it." Joyner v.
Greiner, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002)
(dismissing pro se plaintiff's complaint for failing
to allege facts to support a necessary element of his
claim).

The Court is not limited to the four corners of
the complaint, but may consider outside documents which are
integral to it regardless of whether attached to the
complaint, so long as the pleader has notice of them or
refers to them.  See Schnall v. Marine Midland Bank, 225
F.3d 263, 266 (2d Cir. 2000).  "[W]hile courts generally do
not consider matters outside the pleadings, they may
consider documents attached to the pleadings, documents
referenced in the pleadings, or documents that are integral
to the pleadings in order to determine if a complaint
should survive a 12(b)(6) motion.  The records of state
administrative proceedings may be considered." Garcia v.
Lewis, 2005 WL 1423253, at *10 (S.D.N.Y. June 16, 2005).

## IV. THE CLAIM FOR A DUE PROCESS VIOLATION AGAINST DR. BENDHEIM IS DISMISSED

Dr. Bendheim did not violate the Plaintiff's
Fourteenth Amendment due process rights by prescribing

Ultram for his pain without informing him of its possible effects and any viable alternatives.    Inmates have a constitutionally protected liberty interest in refusing the medical treatment they are offered by correction officials. See Washington v. Harper, 494 U.S. 210, 221 (1990) (recognizing a prisoner's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs.").    Recently, the Second Circuit held that this liberty interest in refusing treatment "carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment."    Pabon v. Wright, 459 F.3d 241, 246 (2d Cir. 2006).    To assert a claim for a violation of this due process right to adequate information, an inmate must allege:    "(1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment."    Id.    The Plaintiff has, however, failed to adequately allege the third element of this claim.

In his amended complaint, the Plaintiff alleged that Dr. Bendheim prescribed Ultram for him "without first informing Plaintiff of its addictive propensities, and the dangers this drug presents to a patient with a prior history of opioid dependency." Am. Compl. at ¶ 3. He further alleged that Dr. Bendheim was aware of the addictive propensities "of Ultram before he prescribed it to Plaintiff." Id. at ¶ 9. The Plaintiff has alleged Dr. Bendheim disregarded an excessive risk to Plaintiff's health and safety that could have led to serious harm. Id.

The Plaintiff has, however, failed to adequately allege that Dr. Bendheim was deliberately indifferent to Plaintiff's right to refuse unwanted medical treatment. In his amended complaint, he has alleged that Dr. Bendheim knew Ultram had "addictive propensities" and thus exhibited deliberate indifference by not discussing this risk with Plaintiff. See Am. Cmpl. at ¶ 9. Such an allegation, however, fails to satisfy the deliberate indifference standard applicable to a claim of a violation of the right to medical information. To maintain such a claim, a plaintiff must allege that his right to refuse medical treatment was impaired by correction officials' deliberate indifference. See Pabon, 459 F.3d at 254 (stating that

inmate had alleged correction officials "acted with the
intent to induce [plaintiff] to undergo treatment that he
otherwise might have declined."); Lara v. Bloomberg, No.
04-CV-8690, 2008 WL 123840, at *5 (S.D.N.Y. Jan. 8, 2008)
(holding that inmate failed to satisfy deliberate
indifference element of claim of failure to receive medical
information because "Plaintiff does not, and indeed
Plaintiff cannot, allege that the doctors' purported
failure to inform Plaintiff of the side effects of his
medication were driven by the doctors' desire to require
Plaintiff to accept the treatment offered."); see also
O'Neil, No. 07-CV-358, 2008 WL 906470, at *7 (stating in
dismissal of inmate's due process claims because of failure
to allege deliberate indifference that "Plaintiff does not
allege that any defendant acted with the intent to induce
him to undergo treatment that he otherwise might have
declined."). The Plaintiff has not alleged that Dr.
Bendheim withheld information from him for the purpose of
requiring Plaintiff to accept Ultram.

At most, the Plaintiff allegations against Dr.
Bendheim amount to negligence. However, "[t]he simple lack
of due care does not make out a violation of either the
substantive or procedural aspects of the Due Process Clause

10

of the Fourteenth Amendment." <u>Pabon</u>, 459 F.3d at 250.   The amended complaint against Dr. Bendheim is dismissed.

## V.   THE EIGHTH AMENDMENT CLAIM AGAINST DRS. BERNSTEIN, KOENIGSMANN, MAMIS, AND PHYSICIAN ASSISTANT RODAS IS DISMISSED

The Plaintiff has not alleged facts that Defendants Bernstein, Koenigsmann, Mamis and Rodas acted with deliberate indifference to a serious medical need of Plaintiff.   Under the Eighth Amendment, a state has an obligation to provide medical care and treatment to inmates.   <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 46 (1988); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).   To maintain, however, an Eighth Amendment claim for denial of medical care, an inmate must adequately allege that prison officials were deliberately indifferent to his serious medical needs.   <u>See</u> <u>id.</u>; <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996).

Supreme Court precedent instructs that the deliberate indifference standard embodies both an objective and subjective component.   <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).   For a serious medical need to meet the objective element, it must be "a condition of urgency, one

11

that may produce death, degeneration, or extreme pain."
Hathaway, 99 F.3d at 553 (internal quotation marks
omitted).  To meet the subjective element, a prison
official need not expressly intend to inflict pain, but a
plaintiff must establish that the official acted in a
manner equaling criminal recklessness.  See Farmer, 511
U.S. at 837 ("a prison official cannot be found liable
under the Eighth Amendment for denying an inmate humane
conditions of confinement unless the official knows of and
disregards an excessive risk to inmate health or safety").
An inmate's disagreement with his treatment or a difference
of opinion over the type or course of treatment do not
support a claim of cruel and unusual punishment.  See
Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).
Moreover, mere negligence in providing medical care is
insufficient to state a claim.  See Cuoco v. Moritsugu, 222
F.3d 99, 106 (2d Cir. 2000).

## A.   The Claim Against Dr. Mamis

The Plaintiff has alleged that Dr. Mamis violated
his Eighth Amendment rights by terminating his prescription
for Ultram that he had been prescribed for pain medication.
See Am. Cmpl. at ¶¶ 11-14.  The Plaintiff, however, fails

to adequately allege that Dr. Mamis' actions in ceasing Plaintiff's prescription evidence deliberate indifference to a serious medical need.  In his complaint, the Plaintiff has not alleged that prior to the discontinuance of his Ultram prescription that Dr. Mamis was aware that Plaintiff was addicted to Ultram nor has he alleged that he provided such information to Dr. Mamis.  He has alleged that Dr. Mamis should have foreseen that his termination of the Ultram prescription would lead to Plaintiff's alleged withdrawal symptoms and that Dr. Mamis knew Ultram possessed addictive attributes and that the Plaintiff had been treated with it for an extended period of time.  See Am. Cmpl. at P 13.  A prison's medical staff, however, cannot be deliberately indifferent to wholly speculative medical conditions.  See Patterson v. Lilley, No. 02-CV-6056, 2003 WL 21507345, at *4 n.3 (S.D.N.Y. June 30, 2003) (stating that prison nurse "could only be held deliberately indifferent to an existing, serious medical condition, not a speculative, future medical injury.  The requisite culpable state of mind would necessarily be absent for the unknown, future injury.").

At most, Plaintiff alleges a claim of negligence against Dr. Mamis for his failure to accurately predict

13

that Plaintiff had become addicted to Ultram and would suffer withdrawal symptoms. Negligent medical care, however, does not amount to a violation of an inmate's Eighth Amendment rights. See Bellamy v. Mount Vernon Hosp., No. 07-CV-1801, 2008 WL 3152963, at *5 (S.D.N.Y. Aug. 5, 2008). Dr. Mamis' cessation of a prescription for pain medication did not violate Plaintiff's Eighth Amendment rights.

The Plaintiff has alleged that one week after Dr. Mamis discontinued his Ultram prescription, he met with Dr. Mamis. See Am. Cmpl. At ¶ 27. During this meeting, Plaintiff allegedly complained to Dr. Mamis that "he was hearing bells, and . . . that he couldn't function" without Ultram. Id. In response, Dr. Mamis issued Ibuprofen pain reliever to Plaintiff. Id.

The Plaintiff's allegations do not constitute evidence that Dr. Mamis disregarded his complaints. As the Plaintiff acknowledges, Dr. Mamis provided him with a non-prescription pain reliever after Plaintiff's complained of discomfort. See Am. Cmpl. at ¶ 27. The Plaintiff believes that he required more intensive treatment. "It is well established[, however,] that a difference of opinion

14

between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." Joyner v. Greiner, 195 F. Supp.2d 500, 504 (S.D.N.Y. 2002); see also Little v. Archer, 242 F.3d 389 (10th Cir. 2000) (holding that "plaintiff's issue with defendant's decision that plaintiff's drug addiction did not require treatment is nothing more than a difference of opinion as to proper treatment and, as such, does not rise to the level of an Eighth Amendment violation"). Dr. Mamis' response to Plaintiff's complaints during a single consultation does not amount to an Eighth Amendment violation.

## B.  The Claim Against Physician Assistant Rodas

The Plaintiff has failed to adequately allege an Eighth Amendment claim against Physician Assistant Rodas ("Rodas") for deliberate indifference to Plaintiff's alleged addiction to Ultram. As noted above, to allege a claim for deliberate indifference to a serious medical need, an inmate must adequately plead facts that a defendant acted with a sufficiently culpable state of mind. See Hathaway, 37 F.3d at 66. Specifically, the defendant must "know[] of and disregard[] an excessive risk to inmate

15

health or safety." Id. Indeed, "[t]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." Id. The Plaintiff, however, has failed to allege sufficient facts that Rodas was aware that a substantial risk of harm to Plaintiff's health existed. Moreover, Rodas did not disregard Plaintiff's complaints but took action in response to them.

In his amended complaint, the Plaintiff alleges that in late February 2005, he was brought to the Green Haven Infirmary. See Am. Compl. at ¶ 47. During this visit, he has alleged that he was approached by Rodas who inquired into Plaintiff's complaints. Id. at ¶ 48. Plaintiff has alleged that he told Rodas he was addicted to Ultram and that he refused Rodas entreaties as to who he was purchasing Ultram from in the yard. Id. Additionally, the Plaintiff alleged that Rodas accused him of threatening to overdoes on Ultram. Id. He was subsequently placed into a "drug observation cell" in Green Haven's mental health unit. Id. at ¶ 50.

At most, the Plaintiff's allegations amount to a momentary encounter with Rodas in which he told Rodas he

16

was addicted to Ultram.   The Plaintiff's allegations are silent, however, as to what symptoms he was suffering or what information (beyond his own statement) Rodas possessed that indicated Plaintiff was suffering from an addiction to prescription pain medication.   In order to maintain a deliberate indifference claim, a Plaintiff must adequately allege that a defendant possessed actual knowledge of a serious medical need.   See Mills v. Garvin, No. 99-CV-6032, 2001 WL 286784, at *4 (S.D.N.Y. Mar. 2, 2001) (holding that to establish indifference a claimant must establish that a "defendant had actual knowledge of a substantial risk of harm to the plaintiff."   (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

    Even  assuming  arguendo  that  Rodas  possessed sufficient awareness of the Plaintiff's alleged addiction to  Ultram,  his  allegations  do  not  amount  to  Rodas' disregarding an excessive risk to Plaintiff's health or safety.   Even on the minimal foundation of Plaintiff's statement that he was addicted to Ultram and threatened self-harm, Rodas had the Plaintiff removed to the mental health unit, where he was placed under observation for his alleged drug addiction.   See Am. Cmpl. at ¶ 50.   He has alleged that such observation was not sufficient to treat

his alleged addiction.  Disagreements, however, regarding the course of an inmate's treatment do not amount to an Eighth Amendment deliberate indifference claim.  <u>See</u> <u>Bellotto v. County of Orange</u>, 248 Fed. Appx. 232, 237-38 (2d Cir. 2007).

The Plaintiff's amended complaint against Rodas is dismissed.

### C.  The Claim Against Dr. Koenigsmann

The Plaintiff has alleged that Defendant Dr. Koenigsmann's reply to his grievance failed to address the Plaintiff's alleged drug addiction.  See Am. Cmpl. at ¶ 37. Dr. Koenigsmann's investigation of the Plaintiff's grievance, however, dispels the notion that an excessive risk to Plaintiff's health was disregarded.

The Plaintiff has alleged in summary fashion that Dr. Koenigsmann violated his constitutional rights because his reply to Plaintiff's grievance allegedly did not address Plaintiff's addiction.  See <u>Id.</u>  In his report to the Green Haven Grievance Coordinator, Dr. Koenigsmann noted that he reviewed the Plaintiff's medical records and

18

discussed his allegations with his primary physician Dr.
Mamis. See Memorandum from Dr. Carl J. Koenigsmann to
Grievance Coordinator (Feb. 10, 2005). Dr. Koenigsmann
related that the Plaintiff had seen a number of medical
doctors and been given a variety of medications to
alleviate his complaints of pain. Id. In addition, Dr.
Koenigsmann learned that Dr. Mamis had discontinued
Plaintiff's Ultram prescription because the Plaintiff had
failed to attend his required appointments and his
continued claims of pain were unsubstantiated. Id.
Notwithstanding these findings, the Plaintiff was referred
to a specialist in pain management. Id.

Dr. Koenigsmannn's actions in regards to the
Plaintiff's grievance reflect a competent investigation,
not a deliberate indifference to Plaintiff's medical needs.
The Plaintiff was seen by a number of practitioners and
given a variety of medications. See Davis v. Reilly, 324
F. Supp. 2d 361, 368 (E.D.N.Y. 2004) (finding lack of
conscious disregard of inmate's medical condition where
inmate was given appropriate medication for pain and was
frequently seen by prison's medical staff). Despite, the
Plaintiff's failure to cooperate with his treatment, he was
still sent to see a specialist in pain management. See

19

Amaker v. Coombe, No. 96-CV-1622, 2002 WL 523388, at *7 (S.D.N.Y. Mar. 29, 2002) (finding no deliberate indifference where prisoner was referred to specialists by prison's medical staff).

Nevertheless, a complaint of negligence against a medical practitioner (even malpractice) does not amount to a constitutional violation. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (holding that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); accord Baez v. Kahanowicz, 278 Fed. Appx. 27, 29 (2d Cir. 2008) (holding that plaintiff's claim "that his arm fracture was improperly set, causing deformity and pain" was a claim of medical malpractice, not an Eighth Amendment violation).

Plaintiff has failed to plead a cause of action against Dr. Koenigsmann for deliberate indifference to a serious medical need in connection with Plaintiff's alleged drug addiction.

A medical supervisor can be liable under § 1983 if he is grossly negligent in his supervision of a subordinate who has committed a constitutional violation. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). A necessary factor, however, of this supervisory liability is that a constitutional violation have occurred. See Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003) (finding no liability on part of medical supervisor where no subordinates violated prisoner's constitutional rights). The Plaintiff has failed to satisfy this necessary ingredient of a constitutional violation on Dr. Koenigsmann's part.

On the basis of "information and belief" the Plaintiff has alleged that Dr. Koenigsmann was aware of Ultram's allegedly addictive propensities. See Am. Cmpl. at ¶ 39. He has further alleged that Dr. Koenigsmann was grossly negligent in supervising his subordinates in his failure to provide necessary information to Plaintiff in order that he could make an informed consent to take Ultram. Id. at ¶ 40. As noted, however, in Point I supra, Dr. Bendheim did not violate Plaintiff's due process right to adequate information. The failure to state a claim for an underlying constitutional violation forecloses

21

supervisory liability.   See Ramos v. Artuz, No. 00-CV-194, 2002 U.S. Dist. LEXIS 25678, at *30 (S.D.N.Y. Aug. 27, 2002) (finding in claim alleging deliberate indifference that no supervisory liability claim existed where there was no constitutional violation by supervisor's subordinates).

The amended complaint against Dr. Koenigsmann is dismissed.

### D.   Claim Against Dr. Bernstein Is Dismissed

As set forth above, an inmate's disagreement regarding his treatment or a difference of opinion over the type or course of treatment do not support a claim of cruel and unusual punishment.   See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

The Plaintiff has alleged that he wrote two repetitive letters to Dr. Bernstein in rapid succession. See Am. Cmpl. at ¶¶ 67, 69.   Shortly after these letters, he met with Dr. Bernstein for an evaluation.   Id. at ¶¶ 72, 73.   As a result, the Plaintiff was allegedly treated with detoxification.   Id. at ¶ 73.

In his amended complaint, however, the Plaintiff has maintained that the treatment resulting from his evaluation by Dr. Bernstein was "ineffective." Id. Such an allegation, however, fails to state an Eighth Amendment claim. Dissatisfaction with treatment provided does not amount to an Eighth Amendment violation. See Jacobs v. Stornelli, 115 Fed. Appx. 480, 481 (2d Cir. 2004). Moreover, Dr. Bernstein's evaluation and recommendation of treatment cannot amount to a claim of deliberate indifference. See Guarneri v. Bates, No. 05-CV-444, 2008 WL 686809, at *6 (N.D.N.Y. Mar. 10, 2008) (holding that disagreement with a prison physician's recommended course of treatment does not amount to a constitutional violation).

In addition, the Plaintiff briefly references a single letter written months earlier to Dr. Bernstein concerning Plaintiff's alleged issues with his pain medication. See Am. Cmpl. at ¶ 76. Plaintiff has acknowledged Dr. Bernstein's response to this letter but, as with Dr. Koenigsmann's response to his grievance, the Plaintiff believes Dr. Bernstein's response did not focus on his allegation of addiction. However, as with Dr. Koenigsmann, the allegation against Dr. Bernstein amounts

23

to at most negligence for primarily focusing on Plaintiff's various other complaints and is not a claim of constitutional dimensions. See Geyer v. Choinski, 262 Fed. Appx. 318, 319 (2d Cir. 2008) (stating "deliberate indifference describes a mental state more blameworthy than negligence.") (internal quotation marks omitted).

Finally, the Plaintiff has also alleged a claim against Dr. Bernstein for negligent supervision regarding the failure to provide him with adequate information concerning Ultram in order to make an informed decision concerning his use of Ultram. See Am. Cmpl. at 79. Once again, however, as with Dr. Koenigsmann, the Plaintiff cannot maintain an action for negligent supervision against Dr. Bernstein because he cannot maintain a claim for failure to provide information against the subordinate in question, Dr. Bendheim. See Ramos, at 2002 U.S. Dist. LEXIS 25678, at *30.

Based on the authorities and conclusions set forth above, the amended complaint against Dr. Mamis, Physician Assistant Rodas, Dr. Koenigsmann, and Dr. Bernstein is dismissed.

24

## VI. THE CLAIM AGAINST DR. WRIGHT IS DISMISSED

As set forth above, a supervisory defendant cannot be held liable under 1983 if the supervisor was grossly negligent in his supervision of the subordinates who committed the constitutional violations in question. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). To maintain such a claim, however, an inmate must adequately "allege that the official had actual or constructive notice of the unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act." Ifill v. Goord, 03-CV-3555, 2005 WL 2126403, at *4 (W.D.N.Y. Sep. 1, 2005). The Plaintiff has failed to allege that Dr. Wright had any notice that the Plaintiff was allegedly given Ultram without his informed consent or that his alleged addiction to Ultram was not properly treated.

In his amended complaint, the Plaintiff has alleged that Dr. Wright is aware that Ultram is prescribed without prisoners' informed consent, see Am. Cmpl. at ¶ 96, and that upon information and belief, that Dr. Wright has been provided a report either from Department of Correctional Services medical staff or security staff, that

Ultram addiction is blossoming among the inmate population. Id. at ¶ 97.   However, his amended complaint failed to allege any facts concerning Dr. Wright's knowledge of the Plaintiff's own consumption of Ultram without his informed consent or his alleged issues concerning his need for addiction treatment.   Allegations that fail to evidence any knowledge on the supervisor's part concerning the alleged constitutional violations in question, do not amount to personal involvement on behalf of the supervisor in question.   See Ozuno v. Vadlamudi, 2006 WL 1977618, at *9 (N.D.N.Y. July 11, 2006) (dismissing deliberate indifference claims against supervisory personnel alleging the failure to properly supervise subordinates).

The amended complaint against Dr. Wright is dismissed.

## VII. DEFENDANTS KOENIGSMANN AND RODAS ARE ENTITLED TO QUALIFIED IMMUNITY

In addition, Defendants Dr. Koenigsmann and Physician Assistant Rodas are entitled to qualified immunity from the Plaintiff's demand for monetary damages. Qualified immunity shields "government officials performing discretionary functions . . . from civil damages liability

as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987). Stated more succinctly, it protects officials who "act in ways they reasonably believe to be lawful." <u>Id.</u> at 641. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (quoting <u>Malley v. Briggs</u>, 475 U.S. 341, 343 (1986)).

As to Dr. Koenigsmann's review of Plaintiff's grievance, there is no allegation that his conduct was in any way contrary to clearly established law that a reasonable person would be aware of. Indeed, at the very least, it was objectively reasonable for Dr. Koenigsmann to believe that no precedent barred his investigation of and negative recommendation upon Plaintiff's grievance. Likewise, it was objectively reasonable for defendant Rodas to have an inmate who had threatened suicide to be transferred back to the mental health unit to be placed on a drug watch. Defendants Koenigsmann and Rodas are entitled to qualified immunity for their objectively reasonable actions.

**Conclusion**

    The motion of the Defendants is granted and the amended complaint is dismissed with prejudiced.

    It is so ordered.

New York, NY
November  23 , 2009

ROBERT W. SWEET
U.S.D.J.